BEN R. THEBAUT, JR. and THE ESTATE OF CAROL N. THEBAUT, by BEN R. THEBAUT, JR., as Personal Representative, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thebaut v. Commissioner
Docket No. 8235-81.
United States Tax Court
T.C. Memo 1983-700; 1983 Tax Ct. Memo LEXIS 85; 47 T.C.M. (CCH) 400; T.C.M. (RIA) 83700; November 28, 1983. William E. Boyes,James R. Merola, for the petitioners. Ricardo A. Cadenas, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency of $9,010.12 in the income tax due from the petitioners for 1977. Due to concessions, *86 the sole issue for our decision is to what extent, if any, petitioners are entitled to a casualty loss under section 165. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Petitioner, Ben R. Thebaut, Jr., is an orthopedic surgeon and is the executor of the estate of Carol N. Thebaut, who died after they has filed a timely joint income tax return for 1977 but before the petition was filed in this case. Dr. Thebaut resided in Lake Park, Florida, at the time the petition was filed. In 1973 the Thebauts purchased a home in Lake Park for $81,500, which is the minimum amount of their basis in the property. The home was located on the Intercoastal Waterway and was situated on a one-acre sand lot which had no grass or landscaping. Petitioners engaged Ray S. Rood of the Rood Landscape Company, Inc., to landscape the lot. By January 1977 the lot was grassed and lavishly landscaped with a variety of trees, flowering bushes, and shrubbery. *87 The value of the property was greatly enhanced by the landscaping. In January of 1977, southern Florida, including Lake Park, experienced an unusual and catastrophic freeze which resulted in damage to and the death of a substantial portion of the landscape improvements to the property. Mr. Rood examined the property in April of 1977 and estimated that to replace the damaged and destroyed plants would cost $14,541.26. Mr. Rood, who had owned and operated a nursery and landscape business since 1946, concluded that the affected plants were a total loss. Petitioners were not compensated by insurance for the loss. On their 1977 income tax return, petitioners claimed the estimated replacement cost of $14,541.26 as a casualty loss deduction under section 165(c). Respondent disallowed the entire deduction. Dr. Thebaut testified that he could not afford to replace all of the damaged plants at one time. Instead, he replaced them over a period of time by purchasing various plants at area discount stores. With the help of his "yard man" he also did the actual labor himself instead of hiring Mr. Rood. Three to four years after the freeze, a few of the plants that had been "burned" *88 back to he ground regenerated new plants from the root. These regenerated plants were generally scraggly and unacceptable as replacements. This tended to support Mr. Rood's initial conclusion that even though some of the plants could be regenerated from the root over a number of years, "professionally, we would consider them a total loss." Petitioners also called Douglas T. Longhurst, an experienced real estate broke and appraiser, who testified that in his opinion the value of the residence was $152,000 prior to the freeze and $137,000 immediately after the freeze. His pre-freeze evaluation was based upon the sale of comparable residences with lavish landscaping. His post-freeze evaluation was based upon the comparable sales less an adjustment for the value of their landscaping. Mr. Longhurst concluded that as a result of the freeze damage the market value of petitioners' residence declined by $15,000 and the diminution in value was attributable solely to the damage caused to the property by the freeze and not to a general decline in the market because the area had been struck by the freeze. The respondent offered no evidence to rebut Mr. Longhurst's testimony. OPINION Section *89 165 [2] permits individuals to deduct losses suffered as a result of damage to or the destruction of non-business property caused by fire, storm, or other casualty to the extent that the loss from each casualty is in excess of $100 and is not compensated for by insurance.Sec. 165(c)(3). *90 Respondent argues that no amount is deductible in this case because the damage resulted from a freeze which respondent characterizes as a common and foreseeable occurrence in southern Florida. Dr. Thebaut contends that a freeze in southern Florida is an unusual and unexpected event which is a "casualty" and that damage from such casualty is deductible under section 165. From the uncontroverted testimony of Dr. Thebaut, Mr. Rood, and Mr. Longhurst, the Court is satisfied that this particular freeze was unusually severe and the damage suffered by the petitioners could not have been reasonably anticipated by them. The phrase "other casualty" in section 165 and its predecessors has been defined as a loss proximately caused by a sudden, unexpected, or unusual event. Matheson v. Commissioner,54 F.2d 537 (2d Cir. 1931); Maher v. Commissioner,680 F.2d 91 (11th Cir. 1982), affg. 76 T.C. 593 (1981). We have held that damage and destruction of plants and trees due to an unusual, severe freeze gives rise to a casualty loss deduction under section 165. Graham v. Commissioner,35 T.C. 273 (1960); Knapp v. Commissioner,23 T.C. 716 (1955). *91 [3] Accordingly, based on the facts of record, petitioners are entitled to a casualty loss deduction.
The proper measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not to exceed its adjusted basis. See Helvering v. Owens,305 U.S. 468 (1939); Millsap v. Commissioner,46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. Improvements to real property, not used in a trade or business, such as trees and shrubbery are considered an integral part of the property. See Wilhelm v. Commissioner,T.C. Memo. 1978-443, affd. in an unpublished opinion (3rd Cir. 1980); sec. 1.165-7(b)(2)(ii), Income Tax Regs. Under the test set forth in Millsap and the regulations, petitioners must prove the difference between the fair market *92 value of their residence before the freeze damage to their trees, shrubbery and other landscaping, and the fair market value of their residence immediately after such damage. The extent of the decrease in the value of the property is a question of fact to be determined from all relevant evidence. Graham v. Commissioner,35 T.C. 273, 278 (1960). In their return petitioners relied upon the estimated cost of replacing the damaged plants as the amount of their casualty loss. We have held, however, that while the actual cost of replacement is evidence of the amount of a casualty loss, an estimate of the cost of such replacement is not. Lamphere v. Commissioner,70 U.S. 391, 396 (1978). Nevertheless the estimate made by Mr. Rood in this case is evidence that plants were damaged by the freeze and were considered by him to be a total loss. Furthermore at the trial petitioners produced other evidence which established that there was a decline in the value of the residence as a result of the freeze. After a careful review of the entire record, including the testimony of the appraiser and the landscape architect, and all other relevant factors, we are *93 satisfied that the fair market value of the property immediately before the freeze was $152,000 and immediately after the freeze was $137,000. Therefore, petitioners are entitled to their claimed casualty loss deduction subject to the limitations of section 165(c). Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Section 165 provides in relevant part: (a) GENERAL RULE.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) AMOUNT OF DEDUCTION.--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) LIMITATION ON LOSSES OF INDIVIDUALS.--In the case of an individual, the deduction under subsection (a) shall be limited to-- * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. For purposes of the $100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. * * *↩
3. See also Blomeley v. Commissioner,T.C. Memo. 1964-84; cf. Wilhelm v. Commissioner,T.C. Memo. 1978-443, affd. in an unpublished opinion (3rd Cir. 1980), cert. denied 449 U.S. 873↩ (1980).