C. A. DAHL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19331.   Promulgated February 20, 1928.

*D. J. Gantt, Esq.*, for the petitioner.
*William H. Lawder, Esq.*, for the respondent.

· OPINION.

MORRIS: The first allegation of error urged by the petitioner pertains to the action of the respondent in increasing net income for the year 1920 by the amount of $1,000, which sum represents a settlement of one of its insurance policies shortly after the fire occurring in December, 1920.

The petitioner carried $8,000 of fire insurance evidenced by several policies placed with different companies. A fire occurred on December 25, 1920, and on or before December 31, 1920, the petitioner succeeded in settling one of those policies and it received the sum of $1,000. The amount received was entered in the books of account of the petitioner in a " reserve for replacement fund " and was carried in the petitioner's balance sheet for the year ended December 31, 1920. The petitioner having included in its income and profit-tax return for the year ended December 31, 1920, a deduction of $2,200 entitled " improvements, store, burned," the respondent reduced it by the amount of insurance recovered within the year.

The petitioner contends that its net income should not have been increased by the sum of $1,000, but that that amount should have remained in the replacement fund in accordance with article 50 of Regulations 45, which reads:

Replacement fund for loss.—In any case in which the taxpayer elects to replace or restore the lost, damaged, or transferred property, but where it is not practicable to do so immediately, he may obtain permission to establish a replacement fund in his accounts in which the entire amount of the compensation so received shall be held, without deduction for the payment of any mortgage, and pending the disposition thereof the accounting for gain or loss thereupon may be deferred for a reasonable period of time, to be determined by the Commissioner. * * *

The sum of $2,200, against which the amount of recovery of one insurance policy has been applied by the respondent, represents improvements made to the premises of the petitioner which were destroyed by fire in 1920. In an effort definitely to determine the nature of this deduction for tax purposes, the respondent's counsel asked the witness, " What was the $2,200 you claimed as a deduction? Didn't that cover the loss of these premises in that year by fire? " A. " I suppose not. I don't know enough about bookkeeping to tell you." Furthermore, efforts to learn from the petitioner's witness what property was covered by the policy upon which the sum of $1,000 was collected in 1920, were fruitless.

As it appears from the record before us the petitioner deducted in its return for 1920, a portion of its fire loss, and the respondent has reduced that amount by the insurance settlement in 1920, which he considers to be a recovery on the property charged off. The respondent's determination is prima facie correct and for failure to overcome that prima facie correctness by the evidence, we must sustain his determination with respect to this item. Even assuming that the item of $2,200 was not a loss by fire but was, in fact, repairs or depreciation, the petitioner has failed on the evidence presented to bring itself within article 50, *supra*, in relation to the $1,000 insurance recovered in 1920.

The second question is whether the respondent erred in reducing the rate of depreciation on greenhouses from ten per cent to seven and one-half per cent. Since we do not know the life of the greenhouses in question, we are at a total loss to determine a proper rate of depreciation. Of course, the testimony is to the effect that due to moisture and lack of paint there is a rapid deterioration, but in order to determine. a rate of depreciation we must first know how rapid that deterioration is. For failure to adduce sufficient evidence in support of this allegation of error we must sustain the findings of the respondent.

The third question presented for consideration is whether the petitioner is entitled to a determination of its taxes under the provisions of sections 327 and 328 of the Revenue Act of 1918. We are of the opinion that the petitioner has not adduced sufficient evidence of abnormality, either in capital or income, to justify the determination of its taxes under the so-called relief provisions of the law. The petitioner has shown that at the beginning of 1920 it owed on notes payable to officers, $13,430.78, and on open account, $25,996.05, and at the end of 1920 it owed $9,211.43. It also owed the Central Bank & Trust Corporation for money borrowed as of January 1, 1920, $15,000, and at the end of 1920, $7,000.

The mere fact that a taxpayer has the use of borrowed capital is not in and of itself evidence of abnormality unless the fact that it creates an abnormal condition is clearly shown by the evidence. We do not even know to what extent the borrowed capital contributed to the earnings of the petitioner during the taxable year. We are told that it had borrowed money at the beginning of 1920 of certain amounts and also at the end of 1920, but we are not told whether those amounts were employed in the business during the entire year or for any substantial portion thereof.

We are unable to find from the evidence offered that any of the conditions provided for in section 327 of the Revenue Act of 1918 are present and we, therefore, deny the contentions of the petitioner.

*Judgment will be entered for the respondent.*